IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MICHAEL DEON BARBEE, individually and as next friend of KRISTOPHER ALLEN BARBEE, a minor, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. H-10-1797 |
| BARBARA SCOTT, CRETE CARRIER CORPORATION, AM-MEX RESTAURANT, INC., and LUNA'S MEXICAN RESTAURANT, | § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Michael Deon Barbee ("Barbee") brings this action individually and as next friend of Kristopher Allen Barbee, a minor, against Barbara Scott, Crete Carrier Corporation ("Crete"), and Am-Mex Restaurant, Inc. d/b/a Luna's Mexican Restaurant ("Am-Mex") alleging negligence, negligent entrustment, and violation of the Texas Dram Shop Act in connection with a motorcycle accident in which Barbee was injured.  Pending before the court is Plaintiff's Motion to Remand and Motion to Recover Costs (Docket Entry No. 7). For the reasons explained below, the court will grant the motion to remand and deny the motion to recover costs.

## I.  <u>Factual and Procedural Background</u>

This action concerns a motor vehicle collision on January 26, 2009, involving Barbee's motorcycle and a large commercial truck driven by defendant Scott.  Barbee seeks to recover damages for his injuries from Scott as the driver, from Crete as Scott's employer, and from Am-Mex under a theory that Am-Mex served Scott alcoholic beverages prior to the accident.  Barbee and his son Kristopher Allen Barbee are individuals residing in Harris County, Texas.[1] Defendant Scott is an individual residing in Oklahoma.[2]  Crete is a corporation with its principal place of business in Nebraska.[3] Am-Mex is a Texas corporation with its principal place of business in Texas.[4]  There is no dispute that both Barbee and Am-Mex are residents of Texas.

## A.   **The Accident**

The parties agree that Barbee was injured when his motorcycle collided with the truck driven by Scott at approximately 8:21 p.m. on January 26, 2009, but the parties agree about little else. Barbee alleges:

---

[1]Plaintiff's Original Petition, Exhibit 1 to Defendant Crete Carrier Corporation, Barbara Scott, Am-Mex Restaurant, Inc. and Luna's Mexican Restaurant's Notice of Removal ("Notice of Removal"), Docket Entry No. 1, ¶¶ 2-3.

[2]Notice of Removal, Docket Entry No. 1, ¶ 4.

[3]<u>Id.</u> ¶ 3.

[4]<u>Id.</u> ¶ 5.

The collision was caused by Defendant Barbara Scott while she was driving within the course and scope of her employment for Defendant Crete Carrier Corporation. On or about January 26, 2009, Defendant Scott was a patron at the Luna's Mexican Restaurant located at 730 E. Cedar Bayou Lynchburg in Baytown, Texas. While at the restaurant, Ms. Scott was served and consumed alcoholic beverages. As she exited the 700 block of Cedar Bayou Lynchburg, Defendant Scott failed to yield the right of way while entering the roadway. As a result, Defendant Scott's vehicle cut in front of Plaintiff's vehicle. In the collision, Plaintiff was thrown from his motorcycle and was run over by Defendant Scott. Plaintiff sustained severe personal injuries.[5]

The defendants dispute many aspects of Barbee's account. Of particular concern for the pending motion is Barbee's allegation that Am-Mex served alcohol to Scott while she was at the restaurant. Barbee's Dram Shop cause of action against Am-Mex is based on his allegation that Am-Mex "sold, served and/or provided alcohol to Defendant Barbara Scott when it was apparent to the Defendants and their employees that Defendant Barbara Scott was obviously intoxicated to the extent that she presented a clear danger to herself and others."[6]

The defendants dispute Barbee's allegation that Am-Mex "sold, served, and/or provided alcohol" to Scott. The defendants note that the accident report shows that the accident occurred at 8:21 p.m. and that Officer Gobea of the Baytown Police Department arrived at the scene at 8:24 p.m.[7] Terry Danielson, an Assistant

---

[5]Plaintiff's Original Petition, Exhibit 1 to Notice of Removal, Docket Entry No. 1, ¶ 13.

[6]Id. ¶ 28.

[7]Texas Peace Officer's Crash Report, Exhibit 9 to Notice of Removal, Docket Entry No. 1.

Chief Toxicologist with the Harris County Institute of Forensic Sciences, testified by affidavit that a sample of blood was drawn from Scott at 9:55 p.m. and was submitted to the forensics office by the Baytown Police Department.[8]   Danielson testified that "No drugs or alcohol were detected by the forensic analysis of Ms. Barbara Ann Scott's blood."[9]   Danielson further states:

> Based on my review of the file pertaining to the blood drawn from Ms. Barbara Ann Scott on January 26, 2009 and the results of the scientific testing performed at our accredited laboratory, it is my opinion based upon reasonable scientific probability that Barbara Ann Scott was not intoxicated at the time of the accident occurring on or about 8:21 p.m. on January 26, 2009.  It is further my opinion based upon a reasonable scientific probability, and the scientifically verifiable data, that there is no basis to conclude that either drugs or alcohol influenced Barbara Ann Scott's actions at the time of the accident.[10]

Danielson attached a lab report, dated February 19, 2009, showing results of "None Detected" for various chemicals that would indicate the presence of alcohol or drugs in the blood sample.[11]

The Defendants have also provided affidavit testimony that they argue shows that Am-Mex did not sell alcohol to Scott on the evening of the accident.  Scott has provided affidavit testimony that "I was not sold, served or provided any alcohol whatsoever

---

[8]Affidavit of Terry Danielson Ph.D., D-ABFT, Exhibit 10 to Notice of Removal, Docket Entry No. 1, p. 1.

[9]<u>Id.</u>

[10]<u>Id.</u> at 2.

[11]Laboratory Report, Exhibit B to Affidavit of Terry Danielson Ph.D., D-ABFT, Exhibit 10 to Notice of Removal, Docket Entry No. 1.

-4-

while at Luna's Mexican restaurant."[12]   Scott also states, "At no time was I ever charged with any citation in relation to the accident."[13]   Paul Rubly, a licensed private investigator working for the defendants, testified by affidavit that two individuals who had been present at the scene of the accident, Shirley Smelley and Shana Hart, told him that they did not believe that Scott had been intoxicated at the time.[14]   The defendants have provided transcripts of Rubly's recorded telephone conversations with Smelley and Hart in which they told him that they did not think that Scott was intoxicated at the time of the accident.[15]   Zahid Khan, the owner of Am-Mex, has provided affidavit testimony stating that he investigated the issue by reviewing all credit card transactions and receipts, and by speaking with all employees and managers who were working at the restaurant on the night of the accident.[16]   Khan

---

[12]Affidavit of Barbara Ann Scott, Exhibit 11 to Notice of Removal, Docket Entry No. 1.

[13]Id.

[14]Affidavit of Paul Rubly, Exhibit 12 to Notice of Removal, Docket Entry No. 1.

[15]Interview with Shana Hart on November 2, 2009, Exhibit 2 to Defendants Crete Carrier Corporation and Barbara Scott's Response to Plaintiff's Motion for Remand ("Defendants' Response"), Docket Entry No. 13, p. 6 ("He asked me if I felt like she had been drinking.  And I told him no, I didn't think so."); Recorded Interview of Shirley Smelley September 15, 2009, Exhibit 4 to Defendants' Response, Docket Entry No. 13, at 10:32 ("Well I walked over to the woman, and she was not inebriated.").

[16]Affidavit of Zahid Khan, Exhibit 13 to Notice of Removal, Docket Entry No. 1, p. 1-2.

states, "The conclusion that I have reached as a result of conducting a full and thorough investigation of this matter is that Ms. Scott was not served any alcohol at my restaurant, nor was she intoxicated when she left my restaurant on January 26, 2009."[17]

Barbee contends that there is evidence that Am-Mex served alcohol to Scott. First, the accident report submitted by Officer Gobea states, "Scott stated she was having dinner at Lunas Mexican Restaurant, she arrived at 1530 hrs."[18] Barbee argues that this statement shows that Scott was at the restaurant for nearly five hours, which, Barbee argues, is more consistent with drinking than with just having dinner. In response to this allegation, Scott has provided a statement by affidavit that she arrived in Houston at 3:30 p.m. but still had to drop off her trailer in Sheldon, Texas, and that she did not arrive at Luna's Restaurant in Baytown until around 7:00 p.m.[19]

Barbee has provided affidavits from two former employees of Luna's Mexican Restaurant, Jennifer Llanas and Teryn Burns, who claim to have been employed at the restaurant on January 26, 2009. Llanas states, "I have spoken with employees at Luna's Mexican

---

[17]Id. at 2.

[18]Baytown Police Department Accident Records, Exhibit 1 to Plaintiff's Motion to Remand and Motion to Recover Costs ("Plaintiff's Motion"), Docket Entry No. 7, p. Barbee 0010.

[19]Supplemental Affidavit of Barbara Ann Scott, Exhibit 6 to Defendants' Response, Docket Entry No. 13, ¶ 8.

Restaurant who were working at the time that Barbara Scott was a patron.  I was told by at least one co-worker that Barbara Scott had consumed alcohol for a lengthy period of time at Luna's Mexican Restaurant."[20]  Burns states, "I have spoken with the employees at Luna's Mexican Restaurant who were working at the time that Barbara Scott was a patron.  I was told by several employees that Barbara Scott had consumed alcohol for over an hour or longer at Luna's Mexican Restaurant."[21]  Neither Llanas nor Burns claim to have witnessed Scott in an inebriated state, nor do they claim to have witnessed any other employee serving alcohol to Scott.

Barbee has also presented the affidavit testimony of Dwain Fuller, a toxicologist, who argues that the negative test result for alcohol in Scott's blood sample does not establish that Scott was not intoxicated at the time of the accident.  Fuller provides several reasons to view the blood test as inconclusive on this question:  approximately an hour and a half passed between the accident at 8:21 p.m. and the taking of the blood sample at 9:55 p.m., during which time any alcohol in Scott's blood would have decreased at a predictable rate; a result of "none detected" in a blood alcohol test may only reflect a measurement below 0.01 g/dL, and does not establish the complete absence of alcohol; there is no

---

[20]Affidavit of Jennifer Llanas, Exhibit 2 to Plaintiff's Motion, Docket Entry No. 7, ¶ 3.

[21]Affidavit of Teryn P. Burns, Exhibit 3 to Plaintiff's Motion, Docket Entry No. 7, ¶ 3.

evidence that preservatives were added to the blood, meaning that the level of alcohol in the blood sample might have dropped through natural chemical processes during the approximately three weeks that passed between the drawing of the blood sample on January 26, 2009, and the release of the toxicology report on February 19, 2009.[22]  Fuller also notes that the legal blood alcohol limit for drivers of commercial motor vehicles is 0.04 percent.[23]  Based on these factors, Fuller states:

> Assuming that Ms. Scott had consumed her last alcoholic beverage at 8:00 pm on January 26, 2009, it is entirely possible that Ms. Scott had a blood alcohol concentration of at least 0.04% at 8:21pm.  At this concentration, it would also be consistent with the average rate that alcohol leaves the bloodstream, for the blood tests that were performed on Ms. Scott's blood drawn at 9:55 pm to indicate that she did not have alcohol in her system.[24]

Regarding the application of preservatives to the sample, Fuller refers to the Blood Withdrawal Procedure Form contained in the Baytown Police Department accident report file.  The form shows that the box is checked off for "Used betadine . . . solution to disinfect arm," but that no other boxes are checked, including the boxes for "Preservative/anti-coagulant powder was visualized in bottom of vial" and "Rotated vial 5 times, as directions indicate, to mix blood with preservative anti-coagulant."[25]

---

[22]Affidavit of Dwain Fuller, D-FTCB, TC-NRCC, Exhibit 11 to Plaintiff's Motion, Docket Entry No. 7, pp. 1-2.

[23]Id. at 2.

[24]Id.

[25]Baytown Police Department Accident Records, Exhibit 1 to Plaintiff's Motion, Docket Entry No. 7, p. Barbee 0026.

**B.    Procedural Background**

The defendants initiated certain proceedings in state court prior to the filing of this action.  On February 27, 2009, Crete sought an injunction in the 80th Judicial District Court of Harris County requiring Barbee and Memorial Hermann Hospital to cooperate in the release and testing of blood samples taken from Barbee on the night of the accident.[26]  Barbee entered a Special Appearance in the 165th Judicial District Court of Harris County on March 10, 2009, arguing that the court lacked jurisdiction to grant an injunction because Crete had failed to serve Barbee properly.[27]  The 165th Judicial District Court denied the application for injunction on March 13, 2009.[28]  On April 29, 2009, Scott filed a petition to intervene in the action between Crete and Barbee, bringing a claim of negligence against Barbee and seeking damages for her own injuries suffered in the accident.[29]  On June 15, 2009, the 165th Judicial District Court dismissed Crete's action against Barbee and

---

[26]Plaintiff's Application for Temporary and Permanent Injunction, Exhibit 4 to Plaintiff's Motion, Docket Entry No. 7.

[27]Defendant Michael Deon Barbee's Special Appearance, Exhibit 7 to Defendants' Response, Docket Entry No. 13.

[28]Order on Plaintiff Crete Carrier Corporation's Application for Temporary and Permanent Injunction, Exhibit 5 to Plaintiff's Motion, Docket Entry No. 7.

[29]Barbara Scott's Petition in Intervention and Requests for Disclosure to Defendant Michael Deon Barbee, Exhibit 6 to Plaintiff's Motion, Docket Entry No. 7.

struck Scott's petition on the grounds that the court lacked subject matter jurisdiction over the action.[30]

Barbee brought suit against the defendants in the 165th Judicial District Court on March 23, 2010.[31]  The defendants removed on May 19, 2010, pleading diversity jurisdiction and arguing that the citizenship of Am-Mex should be disregarded for diversity purposes because Am-Mex was fraudulently joined (Docket Entry No. 1).  On June 17, 2010, Barbee moved to remand, arguing that the defendants had waived their right to remove by contesting the action in state court, and that removal was improper because the presence in the action of Am-Mex defeats diversity (Docket Entry No. 7).  The defendants have responded, arguing that the actions taken by the defendants in state court were insufficient to waive the right to remand, and that diversity jurisdiction is proper because Am-Mex was fraudulently joined (Docket Entry Nos. 13 and 14).  Barbee has replied (Docket Entry No. 21).

---

[30]Order on Defendant Michael Deon Barbee's Motion to Dismiss for Lack of Subject Matter Jurisdiction and Motion to Strike Petition in Intervention, Exhibit 8 to Plaintiff's Motion, Docket Entry No. 7.

[31]Plaintiff's Original Petition, Exhibit 1 to Notice of Removal, Docket Entry No. 1.

## II.  <u>Waiver</u>

Barbee argues that the defendants waived their right to remove this action by initiating proceedings in state court prior to removal.  The defendants argue that their actions in state court were insufficient to constitute waiver.

### A.  Applicable Law

The Fifth Circuit has recognized that seeking an adjudication on the merits of a claim can waive the right to remove.  <u>See</u> <u>Johnson v. Heublein Inc.</u>, 227 F.3d 236, 244 (5th Cir. 2000) ("The Co-defendants waived their right to remove the case under the original complaint by . . . filing both motions to dismiss and a motion for summary judgment in the state court proceeding prior to the filing of the amended complaint by the Co-plaintiffs, thus invoking the jurisdiction of the state court in resolving the issues presented by the original complaint.").  A defendant may waive his right to removal "by proceeding to defend the action in state court or otherwise invoking the processes of that court." <u>Brown v. Demco</u>, 792 F.2d 478, 481 (5th Cir. 1986).  The court in <u>Brown</u> held that the defendants had waived their right to remove because they had "filed answers, amended answers, motions of various kinds, third party demands, cross claims, amended cross claims, and participated in discovery and depositions." <u>Id.</u>  Thus, courts will find that a defendant has waived his right to removal only when the defendant has participated significantly in state

-11-

court proceedings and sought an adjudication on the merits of a claim, such as through a motion for summary judgment. <u>See</u> <u>Ortiz v. Brownsville Indep. Sch. Dist.</u>, 257 F. Supp.2d 885, 889 (S.D. Tex. 2003) ("[Generally,] the right of removal is not lost by action in the state court short of proceeding to an adjudication on the merits." (citing <u>Beighley v. FDIC</u>, 868 F.2d 776, 782 (5th Cir. 1989)).

## B.  Analysis

The defendants engaged in certain limited proceedings in state court.  Crete sought an injunction to preserve Barbee's blood sample, which the state court dismissed for lack of subject matter jurisdiction.  Scott sought to bring personal injury claims against Barbee as an intervenor in the action filed by Crete, but the state court dismissed Scott's petition for lack of subject matter jurisdiction as well.  In other words, the state court never proceeded to an adjudication of the merits of the parties' underlying claims.  Furthermore, the defendants did not pursue in state court the types of dispositive motions on the substantive claims as were pursued by the defendants in <u>Johnson</u> and <u>Brown</u>.  The defendants removed the action promptly once Barbee filed an action that could potentially be removed.  The court concludes, therefore, that the defendants did not waive their right to removal.

### III.  <u>Improper Joinder</u>

Barbee argues that removal of this action was improper because the presence of Am-Mex, a Texas citizen, defeats diversity jurisdiction.  The defendants argue that removal was proper because Am-Mex was fraudulently joined.

### A.  **Applicable Law**

A defendant has the right to remove a case to federal court when federal jurisdiction exists and the removal procedure is properly followed.  28 U.S.C. § 1441.  The removing party bears the burden of establishing that a state court suit is properly removable to federal court.  <u>See</u> <u>Delgado v. Shell Oil Co.</u>, 231 F.3d 165, 178 n.25 (5th Cir. 2000); <u>see also</u> <u>Coury v. Prot</u>, 85 F.3d 244, 248 (5th Cir. 1996) ("[T]here is a presumption against subject matter jurisdiction that must be rebutted by the party bringing an action to federal court.").  Doubts about the propriety of removal are to be resolved in favor of remand.  <u>Manguno v. Prudential Prop. & Cas. Ins.</u>, 276 F.3d 720, 723 (5th Cir. 2002).

### 1.  <u>Improper Joinder</u>

If federal jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332, an action is "removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which [the] action is brought."  28 U.S.C. § 1441(b).  A case may be removed despite the presence of a

resident defendant if the removing defendant shows that the resident defendant was fraudulently or improperly joined. <u>Salazar v. Allstate Texas Lloyd's, Inc.</u>, 455 F.3d 571, 574 (5th Cir. 2006). The burden of persuasion on those who claim fraudulent joinder is a heavy one. <u>Travis v. Irby</u>, 326 F.3d 644, 649 (5th Cir. 2003). To establish that a nondiverse defendant has been improperly joined for the purpose of defeating diversity jurisdiction the removing party must prove either that there has been actual fraud in the pleading of jurisdictional facts or that there is no reasonable possibility that the plaintiff will be able to establish a cause of action against that party in state court. <u>Smallwood v. Ill. Cent. R.R. Co.</u>, 385 F.3d 568, 573 (5th Cir. 2004) (en banc), <u>cert. denied</u>, 125 S. Ct. 1825 (2005). "[T]he test for fraudulent joinder is whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." <u>Id.</u> at 573. All factual allegations in the state court petition are considered in the light most favorable to the plaintiff, and contested fact issues are resolved in the plaintiff's favor. <u>Guillory v. PPG Industries, Inc.</u>, 434 F.3d 303, 308 (5th Cir. 2005).

2.   <u>No Reasonable Basis to Predict a Recovery</u>

The Fifth Circuit has stated that there are two ways in which a court may predict whether a plaintiff has a reasonable basis of recovery under state law.

> The court may conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether the complaint states a claim under state law against the in-state defendant. Ordinarily, if a plaintiff can survive a Rule 12(b)(6) challenge, there is no improper joinder. That said, there are cases, hopefully few in number, in which a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder. In such cases, the district court may, in its discretion, pierce the pleadings and conduct a summary inquiry. <u>Smallwood</u>, 385 F.3d at 573.

A summary inquiry in this context is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant. <u>Id.</u> at 573-74. "Attempting to proceed beyond this summary process carries a heavy risk of moving the court beyond jurisdiction and into a resolution of the merits, as distinguished from an analysis of the court's diversity jurisdiction by a simple and quick exposure of the chances of the claim against the in-state defendant alleged to be improperly joined." <u>Id.</u> at 574. A summary inquiry is appropriate, for example, where a defendant can show that an in-state doctor defendant did not treat the plaintiff patient. <u>Id.</u> at 574 n.12.

**B.  Analysis**

Because it is not disputed that Am-Mex is a Texas resident, removal of this action was only proper if the defendants can show that Am-Mex was fraudulently or improperly joined.  <u>See</u> <u>Salazar</u>, 455 F.3d at 574.  The defendants' burden to prove that Am-Mex was fraudulently joined is a heavy one.  <u>See</u> <u>Travis</u>, 326 F.3d at 649. Because defendants have not alleged that there has been actual fraud in the pleading of jurisdictional facts, to prevail they must prove that there is no reasonable possibility that Barbee will be able to establish a cause of action against Am-Mex in state court. <u>Smallwood</u>, 385 F.3d at 573.  To determine whether defendants have met this burden, the court may conduct either a Rule 12(b)(6)-type analysis or a summary inquiry to identify the presence of discrete and undisputed facts that would preclude Barbee's recovery against Am-Mex.  <u>Id.</u> at 573-74.


1.  <u>Rule 12(b)(6) Analysis</u>

Federal Rule of Civil Procedure 12(b)(6) provides that a claim may be dismissed for failure to state a claim upon which relief can be granted.  A Rule 12(b)(6) motion to dismiss requires the court to accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.  <u>See</u> <u>Swierkiewicz</u> <u>v. Sorema N.A.</u>, 122 S. Ct. 992, 996 & n.1 (2002) (citing <u>Leatherman</u> <u>v. Tarrant County Narcotics Intelligence and Coordination Unit</u>,

113 S. Ct. 1160, 1161 (1993)).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Id. at 997.  A plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007).  Once a claimant adequately states a claim, he may support this claim "by showing any set of facts consistent with the allegations in the complaint." Id. at 1969.

Barbee brings a claim against Am-Mex under the Texas Dram Shop Act, codified in TEX. ALCO. BEV. CODE § 2.02(b).  "In order to hold a provider of alcoholic beverages liable under [the Texas Dram Shop Act] a plaintiff must prove:  1) at the time that the provider sold or served the alcohol it was apparent to the provider that the recipient was obviously intoxicated to the extent that he presented a clear danger to himself and others; and 2) that the intoxication of that individual proximately caused the damages suffered." Southland Corp. v. Lewis, 940 S.W.2d 83, 84-85 (Tex. 1997) (citing TEX. ALCO. BEV. CODE § 2.02(b)).  To prevail on a Dram Shop claim the plaintiff must meet an "onerous burden of proof." F.F.P. Operating Partners, L.P. v. Duenez, 237 S.W.3d 680, 684 (Tex. 2007).  Because this question comes before the court in the context of the defendants' allegation of improper joinder, however, Barbee does not have to meet the "onerous burden" required to prevail on its claim, but rather, the defendants must meet their "heavy" burden of

establishing that Barbee has not stated a claim upon which relief can be granted.

Barbee alleges that Am-Mex "sold, served and/or provided alcohol to Defendant Barbara Scott when it was apparent to the Defendants and their employees that Defendant Barbara Scott was obviously intoxicated to the extent that she presented a clear danger to herself and others."[32]  This allegation, if proven, would establish the first element required by § 2.02(b).  Barbee alleged elsewhere in the complaint, "While at the restaurant, Ms. Scott was served and consumed alcoholic beverages.  As she exited the 700 block of Cedar Bayou Lynchburg, Defendant Scott failed to yield the right of way while entering the roadway."[33]  Viewing this allegation in the light most favorable to the plaintiff, it can be inferred that Scott failed to yield the right-of-way because she had been served alcoholic beverages at the restaurant, thereby establishing the element of proximate cause required by § 2.02(b)(2).  Barbee also generally alleges that "[e]ach and every, all and singular of the foregoing acts . . . constitute a direct and proximate cause of the injuries and damages set forth below."[34]

The court concludes that Barbee has alleged "enough facts to state a claim to relief that is plausible on its face."  <u>Twombly</u>,

---

[32]Plaintiff's Original Petition, Exhibit 1 to Notice of Removal, Docket Entry No. 1, ¶ 28.

[33]<u>Id.</u> at ¶ 13.

[34]<u>Id.</u> at ¶ 29.

127 S. Ct. at 1974.  If all of Barbee's allegations are taken as true, then Barbee has stated a claim against Am-Mex under TEX. ALCO. BEV. CODE § 2.02(b) upon which relief can be granted.  The court concludes, therefore, that under a Rule 12(b)(6)-type analysis the defendants have failed to meet their burden of establishing improper joinder.

### 2.  <u>Summary Inquiry</u>

A court may also conduct a limited summary inquiry into the plaintiff's claim where "a plaintiff has stated a claim, but has misstated or omitted discrete facts that would determine the propriety of joinder." <u>Smallwood</u>, 385 F.3d at 573.  The defendants have presented several pieces of evidence that, they argue, establish that Barbee has no possibility of recovery against Am-Mex.  The defendants urge the court to approach the question with a summary judgment type of inquiry.  The court is not considering a summary judgment motion, however.  A summary inquiry in this context is appropriate only to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant.  <u>Id.</u> at 573-74.

Defendants have presented several pieces of evidence that might be appropriate to consider on a motion for summary judgment, but are not appropriate in the present context.  For example, the affidavit testimony of Scott that she was not served alcohol at the restaurant is not appropriate to consider here, because this

-19-

testimony does not establish a "discrete and undisputed fact."
Whether Scott was served alcohol at the restaurant is a highly
disputed fact, and a fact-finder could choose to disbelieve Scott's
interested testimony in this matter.   Likewise, the affidavit
testimony of Khan that "Ms. Scott was not served any alcohol at my
restaurant" is not a "discrete and undisputed fact" for the same
reasons.   The recorded, unsworn statements of Smelley and Hart
establish only that they did not think that Scott was intoxicated
at the time of the accident; their claimed perceptions do not
establish that Scott was not intoxicated at the time, nor do they
establish that Am-Mex did not serve Scott alcohol earlier in the
night.   All of this evidence is merely persuasive; none of it
identifies an undisputed fact that precludes Barbee's claim against
Am-Mex.

The defendants' strongest piece of evidence is the lab report
showing that no alcohol was detected in Scott's sample of blood
taken at 9:55 p.m. on the night of the accident.   The result of the
blood test is a discrete and undisputed fact that Barbee omitted to
mention in his Complaint, and thus it is appropriate to consider in
a summary inquiry into improper joinder.   The question is whether
the result of this blood test precludes Barbee from recovering
against Am-Mex.   The defendants argue that it does, and offer the
affidavit testimony of Danielson, who states that, "it is my
opinion based upon reasonable scientific probability that Barbara
Ann Scott was not intoxicated at the time of the accident occurring

on or about 8:21 p.m. on January 26, 2009." If a jury were to accept Danielson's opinion as the truth, the jury could not rationally find that Am-Mex's serving alcohol to Scott was the proximate cause of the accident, and thus Barbee could not prevail in his claim against Am-Mex.

Barbee disputes the defendants' interpretation of the significance of the blood test result. Barbee presents the affidavit testimony of Fuller, who argues that due to a variety of factors, including the length of time between the accident and the taking of the blood sample and the lack of proof that preservatives were applied to the sample, "it is entirely possible that Ms. Scott had a blood alcohol concentration of at least 0.04% at 8:21pm."[35] If a jury believed Fuller's testimony that, even though no alcohol was detected in the blood sample, Scott could still have had a blood alcohol level of at least 0.04 percent at the time of the accident, the jury could also believe that the presence of alcohol in Scott's blood was the proximate cause of the accident. Barbee has thus presented evidence that calls into question whether the blood test result precludes Barbee from recovering against Am-Mex. Because there is a reasonable dispute over the proper conclusion to draw from the blood test result, the court concludes that the defendants have failed to demonstrate that Barbee has no possibility of recovery against Am-Mex. The defendants have

---

[35]Affidavit of Dwain Fuller, D-FTCB, TC-NRCC, Exhibit 11 to Plaintiff's Motion, Docket Entry No. 7, p. 2.

therefore failed to meet their burden of establishing fraudulent joinder. Accordingly, the court will grant Barbee's motion to remand.

### IV.  <u>Attorney's Fees and Costs</u>

Barbee seeks an award of attorney's fees and costs under 28 U.S.C. § 1447(c), which provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The United States Supreme Court has stated that "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal." <u>Martin v. Franklin Capital Corp.</u>, 126 S. Ct. 704, 711 (2005). The court cannot say that the defendants lacked an objectively reasonable basis for seeking removal. The defendants have presented evidence -- the blood test results in particular -- from which a jury could reasonably conclude that Scott was not intoxicated at the time of the accident, which would preclude recovery against Am-Mex. The defendants' argument, although ultimately insufficient to overcome the heavy burden of establishing fraudulent joinder, was reasonable and well-supported. Barbee's request for attorney's fees is therefore denied.

## V.  <u>Conclusion and Order</u>

For the reasons explained above, the court concludes that the defendants have failed to prove that Barbee has no reasonable possibility of recovering against Am-Mex.  Because the defendants have failed to establish that Am-Mex was improperly joined, the court lacks diversity jurisdiction over this action, and must therefore remand the action to state court.  Plaintiff's Motion to Remand (Docket Entry No. 7) is **GRANTED**, and this action is **REMANDED** to the 165th District Court of Harris County, Texas.  The clerk will provide a copy of this Memorandum Opinion and Order to the District Clerk of Harris County, Texas.

**SIGNED** at Houston, Texas, on this 17th day of August, 2010.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE

-23-